The GROCERS SUPPLY CO., INC., Appellant,

v.

INTERCITY INVESTMENT PROPERTIES, INC., The Grocery Store, Inc. and Cedric Wise, Appellees.

No. B14–89–01103–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 19, 1990.

Joseph S. Cohen and Jay N. Gross, Houston, for appellant.

Robert H. Singleton, Jr. and Randall L. Brim, Houston, for appellees.

Before SEARS, CANNON and DRAUGHN, JJ.

## OPINION

CANNON, Justice.

This case, previously before this court in a mandamus proceeding, *The Grocers Supply Co. v. Powell,* 775 S.W.2d 76 (Tex.App. —Houston [14th Dist.] 1989, orig. proceeding), was returned to the court below for a trial of the right of property. The trial court awarded possession of the property in question to appellant. Additionally, the

trial court ordered that appellant recover from appellee, Intercity Investment Properties, Inc. the sums it had to pay to obtain possession of the goods from the warehouseman storing the property. The judgment, however, fails to specify the amount due from Intercity. The trial court's failure to correct the judgment to properly show the amount due appellant from Intercity is the sole issue urged by appellant. While appellee Intercity concedes the judgment is erroneous in form, in that it does not specify the amount, Intercity disputes the correctness of the trial court judgment through four cross-points. We modify the judgment and affirm.

The facts are undisputed. On February 3, 1989, Grocers Supply perfected a security interest exceeding $600,000 to secure its inventory financing of The Grocery Store, Inc. and Cedric Wise. On March 6, 1989, Intercity Investments obtained a judgment in the county court against The Grocery Store, Inc. and Cedric Wise for approximately $36,000 and on June 22, 1989, the county court issued a turnover order. Grocers Supply was not a party to that suit.

On July 12, 1989, the constable, accompanied by three attorneys for Intercity, levied writs of execution obtained by Intercity on the The Grocery Store and took possession of the inventory of groceries, equipment, and other items described in the inventory to the writ of execution. The attorneys for Intercity were aware of the prior recorded security interest of Grocers Supply but did not contact Grocers Supply. Upon learning of the execution on The Grocery Store inventory, appellants filed this action on July 17, 1989, to determine their rights in the property, resulting in the judgment from which this appeal is taken.

As above stated, since Intercity agrees that the judgment erroneously omits the amount of money due appellant, we need only address Intercity's cross-points concerning the propriety of the judgment.

In its first cross-point, Intercity contends the trial court erred in awarding possession of the seized property to Grocers Supply. Intercity argues that both TEX.R.CIV.P. 643 and TEX.BUS. & COM.CODE ANN. § 9.311 (Ver-

non 1968) expressly authorize execution against collateral, the sale of which is *subject to* the existing encumbrance. Appellant argues that when confronted with facts almost identical to those in this case, a Florida court held that U.C.C. § 9–311 does not exempt collateral from execution and that it may be seized and sold by the judgment creditor, subject to the secured party's lien. *Altec Lansing v. Friedman Sound, Inc.*, 204 So.2d 740 (Fla.Dist.Ct. App.1967). Intercity also cites *First Nat'l Bank of Glendale v. Sheriff of Milwaukee County*, 34 Wis.2d 535, 149 N.W.2d 548 (Wis.1967) wherein the Wisconsin Supreme Court reached the same conclusion. Based upon these two cases, Intercity reasons this is the majority rule. We agree with Grocers Supply that the precedential effect of *Altec Lansing* is highly questionable because of the later case of *Brescher v. Assoc. Fin. Serv. Co.*, 460 So.2d 464 (Fla. Dist.Ct.App.1984) in which the court made it clear that the "secured party, upon default by a debtor, may recover possession of a chattel by replevin from a sheriff who has taken possession thereof under execution." *Id.* at 465.

■ Texas' version of the Uniform Commercial Code provides that "unless otherwise agreed a secured party has on default the right to take possession of the collateral." TEX. BUS. & COM.CODE ANN. § 9.503 (Vernon 1968). It appears that, with the exception of Wisconsin, other states considering the issue have consistently held that the right of a prior perfected creditor to take possession of its collateral is superior to any right of a mere judgment creditor and that the prior perfected secured creditor may regain possession of the collateral from an officer who has levied on the property at the direction of a judgment creditor. *Edgcomb Metals Co. v. Hydro–Temp, Inc.* 34 Pa.D. & C.3d 129 (Pa.Ct.Comm.Pleas 1984); *Brescher v. Assoc. Fin. Serv. Co.*, 460 So.2d 464 (Fla.Dist.Ct.App.1984); *Murdock & Butkovich v. Blake*, 26 Utah 2d 22, 484 P.2d 164 (Utah 1971); *Chase Manhattan Bank, N.A. v. Therm–X Chem. & Oil Corp.*, 14 UCC Rep. Serv. 1232 (N.Y.Sup. Ct.1974); *General Motors Acceptance*

*Corp. v. Stotsky,* 60 Misc.2d 451, 303 N.Y. S.2d 463 (N.Y.Sup.Ct.1969); *Mechanicks Nat'l Bank v. Parker,* 109 N.H. 87, 242 A.2d 69 (N.H.1968); *Shaw Mudge & Co. v. Sher–Mart Mfg. Co.,* 132 N.J.Super. 517, 334 A.2d 357 (N.J.Sup.Ct.App.Div.1975). *See also Oil Co. U.S. v. First Nat'l Bank of Hereford,* 503 S.W.2d 300 (Tex.Civ.App. —Amarillo 1973, no writ). We agree with this interpretation. To hold otherwise would be to take away from the perfected security interest holder the important right of repossession of the collateral.

■ The security agreement between Grocers Supply and The Grocery Store clearly provided that a judgment against the debtor, or the levy, seizure, or attachment of the collateral constituted a default and upon the occurrence of any of those events, "the entire obligation becomes immediately due and payable at secured party's option without notice to debtor." We hold the right of Grocers Supply, as a prior secured creditor, to take possession of its collateral was superior to the right of Intercity, a mere judgment creditor, and that Grocers Supply could regain possession of the collateral from the constable who had levied on the property. Intercity's first cross-point of error is overruled.

■ In its second cross-point, Intercity contends the trial court erred in adjudging against it the transportation and storage costs incurred. Intercity argues that since such costs are not specifically authorized by rule or statute, and since they are not taxable as costs of court, *Holland Page, Inc. v. Darr Equipment, Inc.,* 351 S.W.2d 586 (Tex.Civ.App.—Amarillo 1961, no writ), adjudging those costs against Intercity was unauthorized and improper. We disagree. As stated above, the evidence shows that Intercity knew of Grocers Supply's security interest before it seized the collateral, yet they failed to notify appellant before taking action. Intercity's action caused Grocers Supply to incur the additional expense of $24,113.00 in order to recover its collateral. Since someone had to pay this expense, it is appropriate that the one causing the injury be ordered to pay. As pointed out by Grocers Supply, the Oregon

Court of Appeals and the Utah Supreme Court have held that a secured creditor with a right of possession of the collateral after default may maintain an action for conversion against one who exercised unauthorized acts of dominion over the property to the exclusion of the creditor's rights. *Oregon Bank v. Fox,* 73 Or.App. 612, 699 P.2d 1147 (Or.Ct.App.1985); *Murdock & Butkovich v. Blake,* 26 Utah 2d 22, 484 P.2d 164 (1971). We believe these authorities are sound and support the court's award of the storage and transportation costs. Intercity's second cross-point is overruled.

In its third cross-point, Intercity contends that it is entitled to damages because Grocers Supply failed to establish its claim to the property seized. Since we have already held that Grocers Supply was entitled to the property, no further discussion is necessary and Intercity's third cross-point is overruled.

■ Finally, in its last cross-point, Intercity contends the trial court erred in awarding to Grocers Supply all funds on deposit in the registry of the court. Intercity argues there is no evidence, or insufficient evidence, that such proceeds constitute "identifiable cash proceeds" from inventory.

The complained of portion of the judgment provides:

> It is further ORDERED that the County Clerk of Harris County, Texas, Anita Rodeheaver, pay all funds if any placed in the Registry of the Court by the Harris County, Texas Constable for Precinct Five in connection with the above-referenced writs of execution to the The Grocers Supply Co., Inc.

The security agreement on the inventory, executed by The Grocery Store, describes the collateral as, among other things, "all cash (currency and coins), checks, drafts, money orders, coupons and other forms of payment for inventory" at the Grocery Store. The agreement goes on to state that it will be "conclusively deemed for purposes of this Security Agreement that all such cash, checks, drafts, money orders

and other forms of payment are proceeds from the sale of debtor's inventory." Since the funds in the registry of the court were obtained from The Grocery Store, the trial court was correct in awarding said funds to appellant. Intercity's fourth cross-point is overruled.

We modify the judgment and order that The Grocers Supply Co., Inc. have judgment against Intercity Investment Properties, Inc. for $24,113.00, such sum being the amount which The Grocers Supply Co., Inc. paid to discharge the warehouseman's lien on the property seized under the writs of execution.

As modified, we affirm the judgment of the trial court.