RYDER, Acting Chief Judge.
J.N. Laliotis Engineering Construction, Inc. (Laliotis) seeks review of the trial court’s order in proceedings supplementary denying its motion for an order requiring the sale of judgment debtor’s stock in a bowling center. Laliotis urges that the certificated security in the possession of a secured party is subject to execution pursuant to section 678.317, Florida Statutes (1989). We agree.
This case is a third appeal[1] concerning litigation between the general contractor, Laliotis, and the Mastors, the owners of property developed for a bowling alley and strip stores.
During postjudgment discovery, Laliotis determined that Frank Mastor owned all of the 1,000 outstanding shares of Countryside Bowling Center, Inc., and that the stock certificate was held as collateral for a $2.9 million loan which First Gulf Bank had made to Countryside on May 9, 1990. Lal-iotis later alleged that after diligent search and inquiry no other real or tangible property of the judgment debtors was discovered upon which levy could be made. Pursuant to Laliotis’ motion, the court entered an order impleading the bank in proceedings supplementary. Laliotis then filed a motion, later amended, praying for an order requiring that the stock certificate be sold at a sheriff’s sale, subject to the rights of the bank.
At the August 9, 1991 hearing on Laliot-is’ motion, it was stipulated that the bank’s lien on the stock certificate was superior to any interest Laliotis may have, and that there had been no default by the Mastors. Also, Laliotis acknowledged that it did not *1272 allege nor would it attempt to prove a fraudulent conveyance concerning the pledging of the corporate stock. Several documents were admitted into evidence including an appraisal report dated April 30, 1990 which valued the bowling center’s property consisting of land, improvements and personal property at $5,620,000.00. Frank Master testified that his financial affidavit dated March, 1990 showed the bowling center’s market value was $5,200,-000.00, but that it was not worth that in August, 1991 because of declining business. The record also includes a stock power executed June 25, 1990 by Frank Master purporting to transfer the 1,000 shares at issue to the First Gulf Bank, but the stock certificate remained registered in Master’s name.
The trial court made findings that the transfer of the stock certificate from Master to the bank was a bona fide transaction, that the interest of the bank was superior to any interest pursuant to the judgment held by Laliotis, and that a judicial sale would necessarily impair the bank’s interest in the collateral and interfere with a bona fide transaction consummated in the ordinary course of business. Based upon these findings, the court denied Laliotis’ motion.
Appellant contends that Frank Master’s general interest in the stock certificate may be sold at a sheriffs sale subject to the bank’s special interest pursuant to the provisions of sections 679.311, 678.317(3) and 56.29, Florida Statutes (1989).
Section 679.311 provides that “[t]he debt- or’s rights in collateral may be voluntarily or involuntarily transferred (by way of sale, creation of a security interest, attachment, levy, garnishment, or other judicial process) notwithstanding a provision in the security agreement prohibiting any transfer or making the transfer constitute a default.” Section 678.317(3) provides in pertinent part that “[t]he interest of a debt- or in a certificated security that is in the possession of a secured party ... may be reached by a creditor by legal process upon the secured party.”
Appellant relies solely on Seaman v. Clearwater Oaks Bank, 469 So.2d 246 (Fla. 2d DCA 1985) (an assignment of a general property right in stock subject to a pledge, the bank’s security interest, in no way interfered with the bank’s special property right).
Appellees seek to distinguish the instant case from the facts in Seaman on the basis that Master has allegedly transferred outright all rights and interest in the stock to the bank through a special power. There is no evidence in the record that the stock power was delivered unconditionally; indeed, we would be surprised if such a power given in the context of a loan transaction would not be subject to express or implied conditions prohibiting its exercise absent a default. Moreover, the bank has not acted upon the power granted to it; the stock certificate remains registered in the name of Frank Master.
Appellees also argue that section 678.317 clearly states that without possession of the certificate, no interest may be reached, transferred or conveyed. We note, however, that subsection (1) from which they extract this legal position is expressly subject to the exceptions in subsections (3) and (4).
Relying on Brescher v. Associates Financial Services Co., Inc., 460 So.2d 464 (Fla. 4th DCA 1984), appellees assert that section 679.311 must be read in pari mate-ria with section 379.306(2), Florida Statutes (1989), and that the legal effect of reading these two statutes together is that the bank would have the immediate right to replevy the certificate from the sheriff as soon as the stock was levied upon.
We do not agree with this reading of the statutes because it presumes that the stock certificate would be sold not subject to the bank’s superior interest to which appellant specifically stipulated. Appellee’s reliance on Brescher is misplaced because that case involved a default. In fact, the court in Brescher distinguished the case of Altec Lansing v. Friedman Sound, Inc., 204 *1273 So.2d 740 (Fla. 3d DCA 1967), because “Al-tec Lansing did not involve an allegation of default on the part of the debtor. In our view, that is the crucial distinction in the case at bar.” Finally, the holding of Brescher determined that as between the general provision of section 679.311 and the more specific provision of section 679.503 (rights of the secured party on default), the latter statute controlled. We conclude that absent a default, the provisions of 679.503 would not be controlling. In this connection, appellees assert that a sheriffs sale in the instant case would be futile because section 679.503 would give them the immediate right to replevy the certificate as soon as the stock was levied upon. Without attempting to give an opinion concerning the legitimacy of such an action, it would seem that such an action would, if permitted, allow a judgment debtor to act with impunity regarding a judgment creditor’s legitimate judgment. Under these circumstances, a sheriffs sale to obtain satisfaction of a $58,725.34.00 judgment would hardly seem to legitimately impair the bank’s secured interest of $2.9 million in a property appraised at $5.6 million.
The Altec Lansing decision made it clear that a security agreement may create a prior lien in favor of the secured party, but it does not exempt the secured property from a forced judicial sale and it may be sold by execution creditor subject to the lien provided in the security agreement.
The scarcity of Florida cases on these issues led us to a few out of state cases which we found helpful in deciding this case. In U.S. Industries, Inc. v. Gregg, 540 F.2d 142 (3d Cir.1976), cert. denied, 433 U.S. 908, 97 S.Ct. 2972, 53 L.Ed.2d 1091 (1977), the court applied Florida law on the nature and extent of the debtor’s interests in collateral and held that the debtor, in pledging his shares as collateral to a Florida bank, had not transferred his entire interest in the stock to the bank at the time of the sequestration. The case of North Bank v. F & H Resources, Inc., 53 Ill.App.3d 950, 11 Ill.Dec. 720, 369 N.E.2d 174 (1977), involved the application of section 9-311 of the Uniform Commercial Code in a decision affirming the trial court’s order that various securities owned by a judgment debtor and pledged to a bank as collateral be sold to satisfy the judgment creditors’ interest.
We conclude that the trial court erred in denying Laliotis’ motion for an order requiring the sale of debtor’s stock, and that Master’s rights in the collateral may be voluntarily or involuntarily transferred by way of sale or other judicial process allowed by law. There are two distinct interests involved here, Master’s and the bank’s. We hold that sections 678.317(3) and 679.-311 clearly allow the debtor’s interest in a certificated security in the possession of a secured party to be reached by a creditor by legal process upon the secured party. Accordingly, we reverse.
Reversed and remanded for proceedings consistent with this opinion.
DANAHY and LEHAN, JJ., concur.

. In J.N. Laliotis Engineering Construction, Inc. v. Mastor, 558 So.2d 67 (Fla. 2d DCA 1990), the judgment in favor of the Mastors was reversed, and the trial court subsequently entered judgment in favor of Laliotis on May 8, 1990, in the amount of $58,725.34. Summary judgment in favor of David Nelson Construction Company, Inc., J.N. Laliotis Engineering Construction, Inc. and J.N. Laliotis reversed in Mastor v. David Nelson Construction Company, 600 So.2d 555 (Fla. 2d DCA 1992).